**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA**

**v.**

Case No. 2:26-cr-02720-MIS

**AGUNDIO SANCHEZ-GONZALEZ,**

Defendant.

**ORDER DENYING MOTION TO DISMISS INDICTMENT**

THIS MATTER is before the Court on Defendant Agundio Sanchez-Gonzalez's Motion to Dismiss Indictment ("Motion"), ECF No. 15, filed July 6, 2026. The Government filed a Response on July 20, 2026 ("Response"), ECF No. 17, to which Defendant did not reply. The Court held a hearing on the Motion September 2, 2026. See Clerk's Mins. of Sep. 2, 2026 Hr'g, ECF No. 25. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **DENY** the Motion.

## I. Background

According to the Criminal Complaint, ECF No. 1, on May 11, 2026, Border Patrol Agents responded to Air and Marine Operations that detected two individuals, including Defendant, suspected of entering the United States illegally southeast of Animas, New Mexico. Crim. Compl. at 1. Agents encountered the individuals, identified themselves as Border Patrol Agents, and questioned both of them in the Spanish language. Id. at 2. Both individuals freely admitted to being citizens of Mexico, without documents to legally remain in the United States. Id. The agents arrested the individuals and transported them to a Border Patrol Station for further processing. Id. Once there, Defendant provided a post-Miranda statement admitting that he was guiding a group of illegal aliens toward Arizona/New Mexico Highway 80. Id. He admitted to having guided

groups of illegal aliens in the past, noting that he had been apprehended by Border Patrol on one prior occasion. Id. Defendant stated that he received monetary compensation from an unknown conspirator for bringing illegal aliens into the United States, and that he was guiding the current group to Highway 80 where they would be met by a vehicle for transport to their destination in Arizona. Id.

On May 13, 2026, a Criminal Complaint was filed against Defendant in the United States District Court for the District of New Mexico. ECF No. 1. The same day, Defendant appeared before United States Magistrate Judge Gregory Fouratt for his initial appearance. See Clerk's Mins. for Initial Appearance, ECF No. 2. The Clerk's Minutes of the initial appearance state that the Court proceeded in Spanish for that hearing but that "any future hearings will require a Tarahumara Alto interpreter." Id.

On June 2, 2026, Defendant appeared for his arraignment/detention hearing, see ECF No. 4, but the hearing was continued because Defendant allegedly spoke a different dialect of Tarahumara than the Court-provided interpreter, and Defendant was unable to proceed in Spanish. Clerk's Mins. of June 2, 2026, Hr'g at 1, ECF No. 6.

On June 9, 2026, a Grand Jury sitting in the District of New Mexico returned an Indictment charging Defendant with conspiracy to transport illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(V)(I). ECF No. 8.

On June 18, 2026, Defendant reappeared for his arraignment/detention hearing, see ECF No. 10, but that hearing was continued because the "Tarahumara Interpreter was not able to communicate with defendant and was having audio/language issues." Clerk's Mins. of June 18, 2026, Hr'g, ECF No. 11.

On June 7, 2026, Defendant filed the instant Motion to Dismiss the Indictment, arguing that his inability to communicate with counsel and the Court violates his Sixth Amendment right to counsel and Fifth Amendment right to due process. Mot. ¶¶ 10-13. He asks the Court to dismiss the Indictment pursuant to the Court's "supervisory powers." Id. ¶ 10. The Government filed a Response on July 20, 2026. ECF No. 17.

On August 19, 2026, the Grand Jury returned a Superseding Indictment charging Defendant with conspiracy to transport illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(V)(I) (Count 1), and illegal reentry of a removed alien in violation of 8 U.S.C. §§ 1326(a) & (b) (Count 2). ECF No. 23.

On September 2, 2026, the Court held a hearing on Defendant's Motion to Dismiss, which the Court describes below. See Clerk's Mins. of Sep. 2, 2026 Hr'g, ECF No. 25.

## II. Legal Standard

"A court may . . . dismiss an indictment by relying on its supervisory powers." United States v. Kilpatrick, 821 F.2d 1456, 1465 (10th Cir. 1987) (citing United States v. Pino, 708 F.2d 523, 530 (10th Cir. 1983)). "The supervisory powers theory is premised on the federal courts' inherent ability to 'formulate procedural rules not specifically required by the Constitution or the Congress.'" Id. (quoting United States v. Hasting, 461 U.S. 499, 505 (1983)). "The supervisory powers theory focuses on deterring illegality and protecting judicial integrity." Id. (citing United States v. McClintock, 748 F.2d 1278, 1285 (9th Cir. 1984)). The Court's supervisory powers may also be invoked "to implement a remedy for violation of recognized rights[.]" Hasting, 461 U.S. at 505.

## III. Discussion

Defendant moves the Court to dismiss the Indictment pursuant to its supervisory powers on the grounds that his inability to communicate with counsel and the Court violates his Sixth Amendment right to counsel and Fifth Amendment right to due process. Mot. ¶¶ 10-13.

The Government argues that Defendant speaks and understands Spanish, as evidenced by the fact that: (1) he spoke to the Border Patrol Agents in Spanish at the time of arrest; (2) the detention, change of plea, and sentencing hearings in his prior prosecution in the District of Arizona were conducted utilizing a Spanish-language interpreter and, in fact, his attorney noted on the record that his primary language was Spanish and that she did not know of any dialect that he spoke; and (3) the Government has obtained recordings of more than forty jail-house calls Defendant made between May 15, 2026 through June 8, 2026, in which Defendant is speaking Spanish.[1] Resp. at 1-3. The Government argues that the Court should appoint a Spanish-language interpreter pursuant to 28 U.S.C. § 1827, deny the Motion to Dismiss Indictment, and warn Defendant that he could be subject to a sentencing enhancement under United States Sentencing Guidelines section 3C1.1 for obstruction of justice based on deliberate efforts to impede judicial proceedings. Id. at 3-5. Alternatively, to the extent that Defendant is truly having difficulty understanding the proceedings, the Government argues that the proper remedy is to find that the ends of justice would be served by continuing the case to obtain additional interpretation services. Id. at 5 (citing 18 U.S.C. § 1361(7)(A), 28 U.S.C. § 1827).

---

[1] In its Response, the Government states that it "is in the process of listening to those calls and will provide a Spanish interpretation of a sample call should the court set this matter for a hearing." Resp. at 3 n.2. During the hearing, the Court asked whether the Government was going to introduce any jail-house calls into evidence, and the Government responded that it was not.

Upon consideration of the evidence presented, counsels' argument, and the observations of the Court at the hearing, the Court finds that Defendant speaks and understands Spanish sufficiently to assist in his defense, and such that his due process rights will not be jeopardized. The Court will begin by summarizing the hearing on the Motion.[2]

During the hearing, the Court provided Defendant a new Tarahumara[3] interpreter—one who spoke a different dialect than the interpreters provided for his prior hearings. The Tarahumara interpreter also spoke Spanish, but did not speak English. The Tarahumara interpreter was communicating over the phone, through the courtroom's speakers, with a Spanish-language interpreter present in the courtroom. The Spanish-language interpreter would translate the Court proceedings into Spanish, and then the Tarahumara interpreter would translate into Tarahumara.

At the beginning of the hearing, the Court asked whether defense counsel had established communication with his client, to which counsel replied he had not. The Court then asked whether Defendant could understand the interpreter. The Spanish-language interpreter translated the question into Spanish, and the Tarahumara interpreter translated the question into Tarahumara. Defendant did not respond to either interpreter. The Tarahumara interpreter attempted to speak with Defendant directly to establish communication, but Defendant did not respond to the Tarahumara interpreter. The remainder of Defendant's hearing was completed using only Spanish language interpreters who spoke to Defendant through a headset.

[2] To aid the Court's summary, the Court referred to the Court Reporter's rough draft of the hearing transcript. The Court does not cite to the rough draft because the rough draft included transcripts of all hearings the Court conducted on September 2, 2026, and therefore the referenced material will be on vastly different page numbers in any final transcript of the hearing.

[3] Tarahumara—also known as Rarámuri—is a language with several dialects spoken by indigenous Mexicans living in a mountainous region of the state of Chihuahua, Mexico. See Rarámuri language, Wikipedia, https://perma.cc/35BT-KH47.

The Government presented evidence to establish that Defendant spoke Spanish. First, the Government called Border Patrol Agent Ricardo Peraldi, who arrested Defendant in the New Mexico desert on May 11, 2026. Agent Peraldi, who is fluent in Spanish, testified that after encountering Defendant and another individual, he explained to them in Spanish that they were under arrest, they had to walk to the closest road, and reminded them to not forget their water. Agent Peraldi testified that Defendant appeared to understand him because Defendant replied to Agent Peraldi in Spanish and responded appropriately to Agent Peraldi's questions. He further testified:

> We were having a conversation in Spanish. I also asked both of them, like, how long have you been walking in the desert, and they stated like ten days, and I was like there's no way you guys have ten days here. I asked them about their food, and they're like oh, we don't have any food, and and they were like how are you going to stay out here the rest of the time. You're not even close to – the closest big highway, which is I-10, and it was just a conversation. From there, we walked for approximately 10, [15] minutes, when the helicopter told us hey we'll pick you guys up, because the closest road is still pretty far. I explained to Mr. Sanchez and his partner that we were going to have to ride the helicopter, which they were pretty excited to ride in the helicopter.

Agent Peraldi testified that Defendant never indicated that he did not speak Spanish.

On cross-examination, defense counsel asked Agent Peraldi whether Defendant knew what he was being arrested for, and how he knew it. Agent Peraldi responded:

> **A.** Well, first of all, because I showed my badge. I had a badge. He knew we were like with the police, with the border patrol. And second of all, he was in the desert, in the middle of nowhere. He knew he entered the country illegally, because he knew he was in the middle of nowhere without -- walking around.
> **Q.** Did he say that to you?
> **A.** They told me that they had been walking in the desert for a while. They told me that he crossed the barrier, and all of this was done without me asking.
> **Q.** That's the extent of what he told you?
> **A.** Up --
> **Q.** With regards to why he believes he was arrested?

> **A.** So he told me -- he told me that. He told me that he had been walking for ten days. He told me -- it was a conversation, I don't recall all the specifics of everything that happened.

The Government asked no question of Agent Peraldi on re-direct examination.

Second, the Government called Border Patrol Agent Benjamin Boras, who interviewed Defendant at a Border Patrol station in Lordsburg, New Mexico, on May 11, 2026. Agent Boras, who is fluent in Spanish, explained that he had a conversation with Defendant in Spanish after he advised Defendant of his rights in Spanish. The Government introduced a written advisal of rights in Spanish, signed by both Agent Boras and Defendant. Agent Boras asked Defendant about his route of travel, where he was going, and what he was doing. Agent Boras testified that Defendant appeared to understand his questions because Defendant would respond to his questions appropriately in Spanish, in complete sentences. Defendant never indicated to Agent Boras that he did not speak Spanish.

Agent Boras further testified that Defendant had previously been apprehended by Border Patrol, and that the previous apprehension had resulted in a criminal conviction. The Government introduced evidence related to the prior case, which was prosecuted in the United States District Court for the District of Arizona. First, the Government introduced a written advisal of rights in Spanish, which Defendant signed. Second, the Government introduced a video (with audio) of a Border Patrol Agent advising Defendant of his rights in Spanish relating to the prior case. Third, the Government introduced a video (with audio) of Border Patrol Agents questioning Defendant in Spanish. Defendant appeared to understand what was being asked of him and answered the questions appropriately. Finally, the Government admitted an audio recording of Defendant's detention, arraignment, plea, and sentencing hearing in which Defendant used a Spanish-language

interpreter.[4] During the hearing, the following exchange occurred between the judge and defense counsel after Defendant appeared to misunderstand the Court's question:

> THE COURT: Ms. Delgadio [defense counsel], did you want to go forward today or –
>
> MS. DELGADIO: [UNINTELLIGIBLE]
>
> THE COURT: Okay. And I take it – is his primary language Spanish?
>
> MS. DELGADIO: It is, Your Honor. He doesn't speak a dialect, that I know of.
>
> THE COURT: Okay.
>
> MS. DELGADIO: But he does have difficulty with compound sentences.

ECF No. 17-1 at 3. The hearing continued and Defendant pled guilty to transporting aliens.

On cross-examination, defense counsel pointed out that although Defendant stated that he understood the rights Agent Boras advised him of, Defendant never explained that he understood his rights. However, Agent Boras testified that it was clear to him that Defendant understood his rights. Defense counsel also pointed out that when the Border Patrol Agents in Arizona asked Defendant if he understood his rights, Defendant responded: "A little bit." Defense counsel also pointed out that during his plea colloquy in Arizona, his attorney indicated that Defendant has difficulty with compound questions, and he answered the majority of the Court's questions with a simple "yes." Finally, the following exchange occurred between Agent Boras and defense counsel:

> **Q.** Did you ask him if he spoke any other language when you spoke with him?
> **A.** Yes, sir. So when I ask him if they understand their rights, I always ask them if they understand Spanish. And he understood Spanish.
> **Q.** Did you ask him if he spoke any other language is my question?
> **A.** No, sir, I did not. Because he told me he spoke Spanish.

The Government asked no question of Agent Boras on re-direct examination.

---

[4] A partial transcript of the hearing is attached to the Government's Response. ECF No. 17-1.

Finally, the Government called Nora Herrera, a Special Management Unit Sergeant at the Luna County Detention Center ("LCDC") where Defendant is currently detained. Ms. Herrera, who is fluent in Spanish, testified that she had conversations with Defendant in Spanish on a daily basis. When Defendant first arrived at LCDC he was quarantined, and Sergeant Herrera would act as a translator between Defendant and the medical unit.

**Q.** In what language did you speak to him?
**A.** Spanish.
**Q.** Did the defendant seem to understand what you guys were talking about?
**A.** Yes, ma'am.
**Q.** How do you know that?
**A.** He will respond in Spanish.
**Q.** Was he ever speaking to you in complete sentences?
**A.** Yes, ma'am.
**Q.** Did he respond appropriately to the questions that you asked him?
**A.** Yes, ma'am.
**Q.** And did he ever indicate that he didn't speak any Spanish to you?
**A.** I'm sorry?
**Q.** Did he ever indicate that he did not people speak Spanish to you?
**A.** Never.

On cross-examination, the following exchange occurred:

**Q.** You officer, did you ever ask him if he spoke any other language?
**A.** I did.
**Q.** What did he respond?
**A.** He said only Spanish.
**Q.** Did he sound like someone who's primary language is Spanish?
**A.** He did sound.

After the close of evidence, defense counsel presented argument in favor of granting the Motion, during which he conceded that Defendant speaks "limited Spanish" and that he has been able to communicate with his client to a certain extent. However, he does not "believe [Defendant's] Spanish is proficient enough to proceed in Court."

The Government argued that Defendant is malingering and that the Court should deny the Motion and appoint a Spanish interpreter.

The Court agrees with the Government that Defendant is feigning ignorance of the Spanish language. At the beginning of the hearing, when the Court asked Defendant whether he understood the interpreter—a question the Spanish interpreter translated to Spanish—Defendant provided no verbal or physical response. However, the evidence presented at the hearing establishes that Defendant has sufficient knowledge of the Spanish language to understand what the interpreter was asking him. Agent Peraldi, Agent Boras, and Sergeant Herrera—all of whom the Court finds to be credible—each testified that they had conversations with Defendant in Spanish and that Defendant clearly understood what was being said. In fact, Sergeant Herrera asked Defendant whether he spoke any other language, and Defendant replied that he only spoke Spanish. And defense counsel admitted during the hearing that Defendant speaks some Spanish and that he has been able to communicate with Defendant to a certain extent.

In light of the overwhelming evidence establishing that Defendant speaks and understands Spanish, and defense counsel's admission that Defendant speaks at least some Spanish, the fact that Defendant provided no response when the Court asked whether he could understand the interpreter, and the interpreter translated that question into Spanish, indicates that he is feigning ignorance of the Spanish language. The Court finds that the evidence establishes that Defendant speaks Spanish proficiently enough to proceed in court.

Accordingly, it is **HEREBY ORDERED** that Defendant's Motion to Dismiss the Indictment, ECF No. 15, is **DENIED**, and the Court will provide Defendant with a Spanish interpreter for all further proceedings.

Margaret Strickland

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE